THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
South Carolina Department of Social Services,       
Respondent,
 
 
 

v.

 
 
 
Cynthia Goethe Norman, Maurice Carter and John Doe, and Child: Justice Renee Goethe DOB: July 2, 2001, Child: Justin Elijah Goethe DOB: July 2, 2001,       
Defendants,
Of whom Cynthia Goethe Norman is       
Appellant.
 
 
 

Appeal From Colleton County
Jane D. Fender, Family Court Judge

Unpublished Opinion No. 2005-UP-293
Submitted April 1, 2005  Filed April 25, 2005

AFFIRMED

 
 
 
Bert Glenn Utsey, III, of Walterboro, for Appellant.
Mark Shelton Moore, of Walterboro, for Respondent.
 
 
 

PER CURIAM:  Cynthia Goethe Norman appeals the family courts termination of her parental rights.  We affirm.[1]
FACTS
Norman is the mother of seven children, with those children having three different biological fathers.  Justin and Justice Goethe, the children involved in this action, are twins born on July 2, 2001, and are the children of Norman and Maurice Carter.  The Department of Social Services (DSS) removed Justin and Justice from Normans home on September 12, 2001, after receiving a report that Justice had ingested a bobby pin.  Pursuant to a family court order dated January 9, 2002, the children have remained in foster care.  
On April 22, 2002, DSS filed this action for termination of Normans parental rights to Justin and Justice alleging numerous grounds, among them that Norman had failed to remedy the conditions that caused DSS to remove the children and that it was not reasonably likely that her home could be made safe within twelve months. [2] 
The family court held a final hearing on January 21, 2003.  By order dated February 17, 2003, the family court terminated Normans parental rights pursuant to South Carolina Code section 20-7-1572(2) because she was not able to remedy within a reasonable period of time the conditions prompting the childrens removal.[3]  Norman filed a timely motion to alter or amend the judgment, which the family court denied. 
This appeal followed.
LAW/ANALYSIS
Norman alleges the family court erred in finding there was clear and convincing evidence that she failed to remedy the conditions warranting the removal of Justin and Justice.  We disagree.
South Carolina Code section 20-7-1572 allows the family court to terminate parental rights upon a finding of one or more of several enumerated grounds and a finding that termination is in the best interest of the child.[4]  Section 20-7-1572(2) permits termination if:

The child has been removed from the parent pursuant to Section 20-7-610 or Section 20-7-736, has been out of the home for a period of six months following the adoption of a placement plan by court order or by agreement between the department and the parent, and the parent has not remedied the conditions which caused the removal.[5]

The family court found the minor children have lived outside the residence of their mother . . . since September 12, 2001.  The family court based removal of Justice and Justin from Normans care on physical neglect and the threat of harm to the children.  Moreover, the family court found the home of [Norman] cannot be made appropriate within a reasonable length of time despite reasonable and meaningful efforts on the part of [DSS] to offer appropriate rehabilitat[ive] services.  Accordingly, the family court held because [Norman] has not been able to remedy conditions which made removal necessary, the Court finds that termination of her parental rights is authorized pursuant to S.C. Code Ann. § 20-7-1572(2).  
We agree with the family courts termination of Normans parental rights and will not substitute our judgment for that of the family court, which was in a better position to assess the credibility of the witnesses.[6]  Moreover, the evidence at the termination hearing supports the family courts finding that Norman was unable to make her home appropriate within a reasonable length of time despite reasonable and meaningful attempts by DSS to provide assistance.
The children were in the custody of DSS for the sixteen months before the final hearing.  Sandy Polk, a foster care supervisor with DSS, testified that none of Normans seven children were in her physical custody when this case came to trial.  All the children had been placed with new families or were in foster care.[7]  In describing her concern about Normans parenting skills, Polk related a incident occurring while Norman was visiting with one of her other children during which the child placed a screw in his mouth and Norman attempted to extricate it with a coat hanger.  In addition, Normans husband testified he had a friend stay with Norman 75 per cent of the time to help her manage her children when they were in her care.  
Additionally, Norman has a nomadic history, moving as often as fifteen times to live with either family or friends.  Immediately prior to the termination hearing, Norman and her husband faced eviction from their home and, as a result, voluntarily surrendered two other children to DSS.  Norman often failed to cooperate with DSS by moving from residence to residence and failing to notify DSS of her relocations.  Although Normans present husband provided some measure of stability, it is undisputed that, shortly before the hearing, both he and Norman were arrested for criminal domestic violence following an altercation between them.  
Polk further testified Norman had a history of mental health problems stemming from diagnoses of schizophrenia and schizoaffective disorder.[8]  Although Polk acknowledged that Norman had been treated for this problem, Polk further stated that Norman was following through with the treatment only inconsistently.  When pressed to answer whether she felt that Normans condition had improved to the point where she would no longer be a threat to the children, Polk replied only that, although she hoped that was the case, she could not provide assurance that Norman would not be a danger to her children.  In response to a question from Normans attorney as to whether Normans home could be made safe within twelve months, Polk replied that it could be an innumerable amount of months and that the parents are no more stable today, as I sit here, to take these children than they were when they were removed.
Considering the foregoing in view of the time the children have spent in foster care, we affirm the family courts termination of Normans parental rights to Justin and Justice pursuant to South Carolina Code section 20-7-1572(2).  We nevertheless take this opportunity to extend our gratitude to Normans counsel for his vigorous efforts on behalf of his court-appointed client during both the family court proceedings and this appeal.
AFFIRMED.
GOOLSBY, HUFF, and STILWELL, JJ., concur.

[1]  Because oral argument would not aid the court in deciding the issue on appeal, we decide this case without oral argument pursuant to Rule 215, SCACR.
[2]  The complaint also alleged failure to visit and failure to support as grounds for termination; however, DSS acknowledged at the final hearing that Norman had exercised visitation and provided support according to her means.  
[3] The family court also terminated the parental rights of Maurice Carter.  Carter did not appeal the termination.
[4]  S.C. Code Ann. § 20-7-1572 (Supp. 2004).  In her brief, Norman challenges only the finding that she had not remedied the conditions that prompted the removal of the children.
[5]  Id. § 20-7-1572(2).
[6]  See Dorchester County Dept of Soc. Servs. v. Miller, 324 S.C. 445, 452, 477 S.E.2d 476, 480 (Ct. App. 1996) (stating that, although this court has jurisdiction to find facts according to its own view of the evidence, [w]e are not required to ignore the fact that the trial judge, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony).  
[7]  All seven children have been the subjects of some DSS action at various times in their lives.  Moreover, Normans parental rights to two of her other children were terminated in March 2001.
[8]  Because of her condition, Norman was appointed a guardian ad litem.  At the beginning of the hearing, the guardian ad litem advised the family court that Norman was not receiving any mental health services and that she did not feel she needed any such services.